UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CHRISTOPHER GREGORY**                                **CIVIL ACTION**

**VERSUS**                                             **NO. 08-4183**

**KIRBY INLAND MARINE, LP**                            **SECTION B(3)**


## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment. (Rec. Doc. 26). The motion is opposed. (Rec. Doc. 30). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part**. The motion is **GRANTED** with respect to Plaintiff's claims of unseaworthiness and **DENIED** with respect to negligence and maintenance and cure.

### BACKGROUND

On or about February 27, 2008, Plaintiff, while employed as Jones Act Seaman by Kirby, was allegedly injured while working as a deckhand aboard the Kirby-owned tug, M/V The City of New Orleans. Plaintiff allegedly suffered injuries to his elbow, shoulder, and back while attempting to release a securing wire back to a barge that was secured to the tug. Plaintiff was standing at the front of the tug and two unidentified persons ("barge employees"),

presumably employees of Wepher Marine, were standing on the barge, opposite Plaintiff.  Plaintiff asserts that he told the individuals on the barge that they were to pull the wire in after Plaintiff threw it in the water and that one of them nodded his head in acknowledgment.  However, Plaintiff asserts that immediately after he unlooped the wing wire from the kevel on the tug, the barge employees pulled the wire before Plaintiff released it from his hand.  As a result, asserts Plaintiff, his hand was caught in the loop of the wing wire and he was jerked from the kneeled position into a standing position and eventually fell to the deck.  Plaintiff also asserts that his immediate supervisor, Joe Hartford was standing on the same barge as the barge employees during this procedure.  Plaintiff reported the accident and an accident report was completed.  Plaintiff received medical treatment from numerous physicians including orthopedist, Dr. Thomas Lyons, who recommended shoulder surgery.  Plaintiff is also receiving treatment for his lower back.

Defendant contends that Plaintiff can prove neither negligence nor unseaworthiness.  In support of its arguments against general negligence and unseaworthiness, Defendant asserts that Plaintiff, who agreed to the rather leading questions placed to him during deposition, testified that there were no problems with the boat or his fellow crewmembers and that Plaintiff did not blame anyone at Kirby for his accident.  Defendant further argues it is not

2

responsible for the actions of the individuals on the barge as the third party fleeting services are performed by an independent contractor and is not part of a service Kirby is obligated to provide to its crew. Finally, Defendant Kirby argues that it is not obligated to pay maintenance and cure because Plaintiff failed to disclose prior pain and injuries in the pre-employment Health Questionnaire.

Plaintiff asserts that the barge employees were acting as agents of Defendant Kirby and thereby contends that Defendant is liable for the actions of the barge employees. Plaintiff also argues that Kirby was directly negligent, asserting that Plaintiff's direct supervisor, Joe Hartford, a Kirby employee, had a duty to supervise Plaintiff and the individuals with whom Defendant Kirby assigned Plaintiff to work. Plaintiff asserts that evidence exists that Kirby breached its duty of seaworthiness by failing to provide a competent crew. Finally, Plaintiff argues that the injuries he failed to disclose were not significant injuries requiring disclosure.

## DISCUSSION

### A.  Summary judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Negligence**

<u>Vicarious Liability</u>

Examination of vicarious liability centers around operational activities and operational control. The Jones Act incorporates the standards of the Federal Employers' Liability Act, "which renders an employer liable for the injuries negligently inflicted on its employees by its officers, agents, or employees." *Hopson v. Texaco*, 383 U.S. 262, 263 (1966); *see also Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir.1997). Under *Hopson*,

4

"when (an) ... employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are agents of the employer within the meaning of FELA." 383 U.S. at 264. An activity is an "operational activity" if it is necessary or vital to the defendant's operations. *Sinkler v. Missouri Pac. R. Co.*, 356 U.S. 326, 327 (1958). The *Hopson* court found the employer liable for the negligence of a taxi driver it hired to transport two ill seamen to the United States Consul's office in Spain. Under statutory law, the employer was required to arrange for the seamen's return to the United States. Another section of this Court found an employer liable for the negligent acts of its catering contractor because the "daily and routine running of a cafeteria is . . . an operational activity necessary to the functioning of a rig." *Sanders v. Diamond Offshore Drilling, Inc.*, No. 00-2307, 2002 WL 31654973, * 3 (E.D.La. Nov. 21, 2002).

A principal can be liable for "injuries resulting from the negligent acts of an independent contractor" if "the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts." *Coulter v. Texaco, Inc.*, 117 F.3d 909, 911-12 (5th Cir. 1997). Operational control "requires an examination of whether and to what extent the right to control work has been contractually reserved by the principal." *Id*. at 912.

The "control" determination "depends in great measure upon whether and to what degree the right to control the work has been contractually reserved by the principal." *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987). "The supervision and control which is *actually* exercised by the principal is less significant." *Id*. at 550-51. The mere presence of a company man or representative on the jobsite does not indicate liability. *Id*. at 550; *see also McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 174-75 (5th Cir. 1979). *McCormack* cites the Restatement of Torts:

> In order for the (employer to be subject to liability for negligent exercise of control over the independent contractor),the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Id*. at 175 n.9.

Defendant attempts to distinguish *Hopkins* by referencing the employer's statutory obligation to arrange transportation for the ill seamen back to the United States. Defendant also characterizes *Hopkins* as a case about "whether the employer exercised sufficient control over the work being performed that the independent

6

contractor became the employer's agent." *Hopkins*, however, spoke not about control over the work being performed but whether the work was an operational activity, one necessary or vital to the employer's operations, and the employer's responsibility for those it selected to do the work. Operational control is a separate theory, and the post-*Hopkins* cases reviewed by the Court evaluate either operational control as articulated in *McCormack* or operational activity under *Hopkins* but not both.

Defendant argues that the fleeting services provided by the third party fleeting service are not activities that Kirby is obligated to provide its crew. Kirby goes on to argue that the fleeting services are performed by an independent contractor who is independently responsible for performing its services safely. This argument is general, speaking only of the "services" of the fleeting service rather than addressing whether the specific wire release process engaged in was an operational activity of Kirby. It is unclear from the deposition excerpts submitted whether Plaintiff and his immediate Kirby employed supervisor, Joe Hartford, were working aboard the barge removing a sounder while fleet employees were also working on the vessel. (Rec. Doc. 30-2 at 2-3). It appears that Hartford remained on board the barge during the release of the securing wire. *Id*. Plaintiff asked his supervisor about doing various tasks and Hartford responded that the fleeting service employees would perform some of them. *Id*. at

7

2. Plaintiff testified that after removing the sounder, Hartford instructed Plaintiff to return to the boat and stated that "he was sending the other guys from Wepher Fleet to the 3P Barge so we could break the wing wire off." *Id*. at 3. Neither party has submitted any concrete evidence or guidance as to exactly what duties were the responsibility of the fleeting service and which were still within the province of Kirby. Plaintiff was directed by his supervisor to loosen the securing wire; hence it appears that the wire release activity was an operational activity necessary to the tug's operations. Once the tug has delivered a vessel, it must disconnect securing wires and other such connecting apparatus. At the very least, questions of fact remain as to whether the wire release process and/or various parts of the wire release process were part of the operational activities of Kirby.

Regarding operational control over the fleet, case law indicates this is largely controlled by contract. Yet Plaintiff's have not mentioned a contract of any sort with the fleeting service. A look at the actual control exercised is telling. Plaintiff testifies, and Defendant Kirby does not dispute, that Supervisor Hartford not only sent Plaintiff to loosen the wire but also talked about "sending" fleet employees to assist. *Id*. This indicates some degree of control over the actions of the fleet employees, at least with respect to the wire release activity. Hence, material issues of fact remain regarding the degree of

8

control, if any, Kirby had over the actions of the fleeting service employees.

Alleged negligence of Supervisor

Genuine issues of fact exist as to whether Kirby supervisor Hartford was negligent. A Jones Act employer is to provide its employees with a reasonably safe place to work. *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989). The duty of care owed by an employer under the Jones Act is that of ordinary prudence, namely, the duty to take reasonable care. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338-39 (5th Cir. 1997). Lack of knowledge is a sufficient defense only when the employer has exercised due care under the circumstances. *Turner v. Inland Tugs Co.*, 689 F. Supp. 612, 619 (5th Cir. 1988). In other words, "the standard of care is not what the employer subjectively knew, but rather what it objectively knew or should have known." *Id*. Under familiar principles of negligence, in Jones Act cases, there must be some evidence from which a jury can infer that the unsafe condition existed and that the owner either knew or, in the exercise of due care, should have known of it. *Perry v. Morgan Guar. Trust Co. of New York*, 528 F.2d 1378, 1379 (5th Cir. 1976). That only the slightest negligence need be shown to uphold the award of damages in such cases does not mean, however, that the seaman may prevail on no evidence at all. *Id*. at 1380.

Defendant makes much of Plaintiff's agreement during

deposition that Hartford could have done nothing to prevent the accident. However, this line of deposition testimony, indeed much of the excerpts submitted by the parties, consisted of leading questions to which Plaintiff simply responded "Correct" or "Yes". After expressing his belief that Hartford should have been monitoring the wire release process, Plaintiff was taken through a serious of leading logic questions and scenarios regarding the instantaneous wire tug and resultant injury; all to conclude that a shout from Hartford not to tug would have occurred too late to prevent Plaintiff's injury. (Rec. Doc. 30-2 at 7-8). No other possible actions of Hartford were addressed in the deposition testimony excerpts submitted to the Court for review. The testimony, however, indicates that Kirby, through its employee Hartford was aware of safety concerns regarding the fleet employees. In fact, Plaintiff testified that after assisting Hartford in pulling out the Sounder and prior to returning to the boat to loosen the wire, he was struck by extra tow wire cables being moved by fleet employees. *Id*. at 2-3. Plaintiff told Hartford that he "felt uncomfortable with the way stuff was being moved." *Id*. at 3. This may have put Hartford on notice of possible concerns regarding the fleet employees and, at the least, put Hartford on notice of Plaintiff's concerns. While Plaintiff's observations and concerns also raise possible issues of contributory negligence, they also indicate issues of material

10

fact, especially when coupled with unanswered questions regarding whether the injury involved an operational activity and the extent of control, if any, Kirby had over the fleet employees.

**C. Seaworthiness**

A ship operator has a duty to provide a seaworthy vessel. *Clevenger v. Star Fish and Oyster Co.*, 325 F.2d 397, 399-400 (5th Cir. 1963). A vessel is unseaworthy if it presents an unreasonable risk of harm to a seaman. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539 (1960). Unseaworthiness is satisfied by failure to provide a competent crew. *Trahan v . Gulf Crews, Inc.*, 255 So.2d 63, 69 (La. 1971). "Only when all of a vessel's appurtenances and crew are reasonably fit and safe for their intended purposes, is a vessel considered seaworthy." *Hernandez v. Bunge Corp.*, 814 So.2d 783, 795 (La. App. 5 Cir. 2002) (*citing Griffin v. LeCompte*, 471 So.2d 1382 (La. 1985)). Unseaworthiness results from a defective condition and is not the result of an isolated negligent act. Hernandez, 814 So.2d at 795(*citing Daughdrill v. Ocean Drilling and Exploration Co. (ODECO)*, 709 F. Supp. 710 (E.D.La. 1989)).

Although Plaintiff asserts that "evidence exists to suggest that the crew was not competent," Plaintiff has provided no such evidence. Plaintiff alludes to the incompetence of the individuals on the barge who allegedly tugged the wire prematurely. However, Plaintiff has never asserted that those persons were part of Kirby's crew. In fact, Plaintiff stated in his deposition

testimony that there were no problems with the boat or any of his fellow crewmembers and that they seemed to understand their responsibilities and duties. (Rec. Doc. 26-3 at 16). Plaintiff also testified that he did not blame anyone from Kirby for the accident. *Id*. at 17. Accordingly, summary judgment is granted on the issue of seaworthiness.

**D. Maintenance and Cure**

A Jones Act employer is entitled to investigate a seaman's claim for maintenance and cure benefits. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005). An employer is allowed to rely on certain legal defenses to deny these claims. *Id*. One such defense is that the injured seaman willfully concealed from his employer a preexisting medical condition. *Id*. (*citing McCorpen v. Central Gulf Steamship Corporation*, 396 F.2d 547 (5th Cir. 1968)). In order to establish a *McCorpen* defense, an employer must show that:

(1) the claimant intentionally misrepresented or concealed medical facts;

(2) the non-disclosed facts were material to the employer's decision to hire the claimant; and

(3) a connection exists between the withheld information and the injury complained of in the lawsuit.

*Id.*

Where the shipowner does not require a pre-employment medical examination or interview, "the rule is that a seaman must disclose

a past illness or injury only when in his own opinion the shipowner would consider it a matter of importance." *McCorpen v. Central Gulf Steamship Corporation*, 396 F.2d 547, 548-49. However, "where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." *Id*. at 549. The Fifth Circuit agreed with the stance of the Ninth Circuit that the "intentional concealment element does not require a finding of subjective intent." *Brown*, 410 F.3d at 174 (*quoting Vitcovich v. Ocean Rover O.N.*, No. 94-35047, 106 F.3d 411, 1997 WL 21205, *3 (9th Cir. Jan. 14, 1997)(unpublished opinion)). The Fifth Circuit continued its quote of the Ninth Circuit:

> Rather, it refers to the rule that a seaman may be denied maintenance and cure for failure to disclose a medical condition only if he has been asked to reveal it. Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the "intentional concealment" requirement.

*Id*. The Fifth Circuit continued, "*McCorpen's* intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination."[1] *Id*. at 175. Maintenance

---

[1] The Fifth Circuit, citing cases from the Eastern District of Louisiana, noted in *Brown* that courts within the circuit had adopted the objective inquiry interpretation of intentional concealment. However, in the case discussed by the

has been allowed, however, in cases in which the courts found the seamen "so ignorant that it could not be said they knowingly concealed pertinent medical facts." *Id*. (holding that plaintiff who was intelligent, literate, and understood English and did not reveal diabetes on pre-employment questionnaire knowingly concealed the illness).

The Fifth Circuit in *McCorpen v. Central Gulf Steamship Corporation,* found that the plaintiff, who failed to disclose on his pre-employment Physical Examination Report and Record his 12-13 year history of diabetes which required daily insulin injections, had concealed the serious illness and was thus barred from

---

Fifth Circuit, *Caulfield v. Kathryn Rae Towing*, 1983 WL 121586, *1 (E.D.La. 1989), the plaintiff failed to disclose an injury incurred on-the-job. The injury in *Caulfield*, though incurred ten years prior to the employment application at issue, involved a severe back injury which required surgery and after which the plaintiff's physician found plaintiff to be "disabled from gainful employment of any type for which he is suited by education or skills." In addition to his failure to disclose the disabling injury, the *Caulfield* plaintiff also checked "no" to the question regarding whether he had suffered a prior on-the-job injury. Another case cited, *Bud's Boat Rental, Inc. v. Wiggins*, Nos. 91-2317, 91-3507, 1992 WL 211453, *1, *2 (E.D.La. Aug. 24, 1992), involved a prior injury for which the plaintiff's physician warned him that he could be crippled if he fell on his buttocks and a pre-existing abnormality in his back of which the plaintiff had been aware since the age of 13; the plaintiff's only argument was that he thought the application only inquired as to his present condition. The third and final district court case cited by the *Brown* court for the objective inquiry of intentional concealment is *In re L.S.K. Towing, Inc.*, No. 94-4134, 1995 WL 350039 (E.D.La. June 6, 1995). In *LSK*, the plaintiff received treatment for the nondisclosed knee injury resulting in torn ligaments and cartilage a mere eight days prior to seeking employment with the defendant, had allegedly been referred to an orthopedic surgeon, and answered negatively when asked whether he was currently under the care of a physician or whether he was currently taking any medications during his employment application health examination.

recovering maintenance and cure. The court found the plaintiff to be "a man of intelligence who [could] read, write, speak, and understand English" and who "knew he was being asked about past as well as present disabilities." 396 F.2d at 550. Accordingly, the court found that the plaintiff was "intelligent enough to know that diabetes, even though in a controlled state, is not an insignificant ailment akin to a cold but is a <u>serious</u> medical problem that should be revealed by the person afflicted whenever he is asked about past illnesses by an examining physician." *Id*. (emphasis added). The *McCorpen* court repeatedly referenced the "disabling" and "serious" nature of the plaintiff's illness and described the health form as seeking "information about past illnesses of <u>importance</u>." *Id.* at 549, 550. (stating "the issue for us is whether [plaintiff] was guilty of the kind of intentional concealment of a <u>disabling</u> illness that precludes an award of maintenance") (emphasis added).

In *Brown v. Parker Drilling Offshore Corp,* the Fifth Circuit overturned a jury verdict in favor of the seaman, finding that the plaintiff had intentionally concealed his prior back injuries. The injuries in *Brown* were relatively minor pulled muscles and back strains. However, the injury at issue in Brown occurred a mere nine months after Brown was fired from his previous employer for his failure to report a prior back injury that had occurred ten months before his application for that job. The health history

15

form utilized in *Brown* asked whether the plaintiff had suffered "Past or Present Back and Neck Trouble." *Brown*, 410 F.3d at 171. The court found that Brown's understanding that his prior injury "rose to the level of back trouble in the eyes of a previous employer" such that he was terminated for such non-disclosure conveyed an understanding on the part of the plaintiff that the injury also fell within the present employer's health form definition of "back trouble." *Id*. at 172, 173 (stating that Brown's testimony indicating that he "knew he had been fired ... for denying he had 'back trouble' ... render(ed) implausible Brown's explanation that, two months later, he did not understand the definition of 'trouble' on [the defendant's] medical questionnaire"). Brown's prior job also listed as a reason for firing Brown his false report of an on-the-job accident and filing a false accident claim. *Id*. at 169.

Plaintiff asserts that during the incident in question he injured his right elbow, right shoulder, and lower back. (Plaintiff's Deposition, Rec. Doc. 26-3 at 2). During the course of applying for a position with Defendant Kirby, Plaintiff completed a pre-employment Health History Questionnaire. (Rec. Doc. 26-4). The musculo-skeletal section of the questionnaire consisted of a Yes/No checklist with instructions to "Check if you have ever had:" various musculo-skeletal pain or injuries. *Id*. at 7. Plaintiff checked "no" for "back pain or injury," "elbow pain,

16

injury," and "shoulder pain, injury." *Id*. Although Plaintiff checked "no" in response to "elbow pain, injury," the medical examiner noted in the comments section that Plaintiff had injured his elbow at age 15 after an accidental fall. *Id*.

Elbow

Plaintiff indicated in his deposition testimony that he had injured his right elbow in 1995 or 1996, prior to his employment with Kirby, when a wood screw went through it. *Id*. at 5. Although this injury was not indicated on Plaintiff's Health Questionnaire, the comments section did indicate an elbow injury. The Questionnaire asks have you ever had an injury and leaves room for comments. It does not instruct the prospective employee to list every single injury or pain he has ever endured. Neither does any case law presented by the parties or reviewed by the Court indicate such a stringent requirement. The comments section of the Health Questionnaire indicated an elbow injury; hence Defendant Kirby was on notice during the application process that Plaintiff had injured his elbow. Accordingly, the Court finds that Plaintiff did not conceal the fact that his elbow had been injured prior to his employment with Defendant Kirby.

Back

Plaintiff admits having been examined for possible back injuries in 1997 and 1999. In 1997 Plaintiff went to the emergency room after a fall off a roof. The lab tests indicated normal

17

results and the doctor signing the radiology report indicated the impression of a normal lumbar spine; however the attending physician indicated the impression of a lumbar sprain. (Rec. Doc. 26-5 at 3-6). Plaintiff testified that he sustained a minor back strain in 1999 while cleaning his home workshop and the attending emergency room physician noted an impression of low back pain. (Plaintiff's Transcript, Rec. Doc. 26-3 at 8-10; see also Rec. Doc. 26-6 at 14-20, Ex. D-Central Mississippi Medical Center records). The 1999 treating physician also noted the "disturbing symptoms" of headache, swollen head, and double vision which Plaintiff contends was the main injury. (Rec. Doc. 26-6 at 16; Rec. Doc. 30 at 8). It is Plaintiff's contention that he cannot be faulted for indicating that he had never sustained injury to his lower back when his prior medical examinations had been normal. Additionally, Plaintiff indicated in the leading deposition testimony that he did not check back pain/injury because he simply did not recall these "minor injuries" when filling out the Health Questionnaire. *Id*. at 14-15.

Defendant makes reference to a physician's report stating that Plaintiff "hurt his back many times . . . while bull-riding" and that Plaintiff's "low back pain happens fairly frequently." Rec. Doc. 26-6 at 16. Plaintiff contends that this statement is in error and argues that his disclosure of his bull riding activities and the associated multiple finger and toe injuries in the Health

18

Questionnaire support his deposition testimony that he never injured his lower back when riding bulls. Such evidence and testimony necessitate a credibility finding which is the province of the jury.

In contrast to the *Brown* plaintiff whose nondisclosed injury occurred a mere year and a half prior to his job application, Plaintiff's incidents of treatment for back pain occurred approximately eight and ten years prior to Plaintiff's completion of his pre-employment Health Questionnaire for Defendant Kirby. In addition and unlike the *McCorpen* plaintiff who was well aware of the serious, ongoing and long term nature of his diabetic condition, material issues of fact exist as to whether any alleged back pain or injuries suffered by Plaintiff in the present case were "<u>serious</u> medical problem(s) that should be revealed by the person afflicted whenever he is asked about past illnesses by an examining physician" or "<u>insignificant</u> ailment(s) akin to a cold." *McCorpen*, 396 F.2d at 550 (emphasis added).[2]

---

[2] Note also the differences between the present case and those Eastern District cases cited in *Brown*, two of which required surgery, one that was disabling, one that carried the threat of crippling in the event of a fall on the buttocks, and one for which the plaintiff was receiving treatment at the time he applied for a job with the defendant. Notably, *Brown* involves the least serious injury of all the cases cited. However, Brown was previously fired by another maritime employer for failure to disclose the exact injury he failed to disclose to defendant and he had previously filed a false accident report. The *Brown* court did not address *McCorpen's* statements regarding the serious or disabling nature of the illness and stopped short of saying that any unreported illness, whether intentional or not, could be a basis for denying maintenance and cure. Instead the court stated what the

19

<u>Shoulder</u>

In Plaintiff's deposition testimony, he indicated that he injured his right shoulder after falling off a roof during his mid-20s. (Rec. Doc. 26-3 at 3). Plaintiff indicated that he did not check shoulder pain/injury because it was a minor injury that he did not recall when filling out the Health Questionnaire. *Id.* at 14-15. Plaintiff argues that it is premature to grant summary judgment on this issue until the nature and degree of his prior injuries can be ascertained. Although the shoulder injuries, which include an allegation of dislocation, seem more severe and more recent than the back injuries discussed above, the Court agrees that a grant of summary judgment on the issue is premature, for summary disposition, without more evidence regarding the serious or disabling nature of the shoulder injuries. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part**. The motion is **GRANTED** with respect to Plaintiff's claims of unseaworthiness and **DENIED** with respect to negligence and maintenance and cure.

New Orleans, Louisiana, this 13th day of May, 2009.

UNITED STATES DISTRICT JUDGE

---

intentional concealment prong does not require: "McCorpen's intentional concealment prong <u>neither necessarily</u> turns on credibility <u>nor requires</u> a subjective determination." *Brown*, 410 F.3d at 175 (emphasis added).